UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RON KLOSOWSKI,

                Plaintiff,                              Case No. 15-cv-10636

v.                                                         Honorable Thomas L. Ludington

BAY CITY, CITY OF, et al.,

                Defendants.
_____/

**ORDER DENYING MOTION FOR RECONSIDERATION AND MOTION TO STRIKE**

        Prior to filing the instant lawsuit, Plaintiff Ron Klosowski was employed with a staffing agency, ITH staffing, and was assigned to Defendant Bay City as a bridge tender. He thought that the bridge ought to close for the winter after the Saginaw River froze, in order to save the city money. He sent an email to that effect to the Mayor in late 2012. In March of 2013, he was informed that he would not be returning as a bridge tender for the 2013 season.

        On August 1, 2013, Plaintiff filed a complaint in the Circuit Court of Bay County alleging 1) tortious interference with advantageous business relationships, 2) tortious interference with contractual relationships, and 3) violation of Michigan public policy and the Michigan Constitution's guarantee of free speech, as against Defendants Joe Ledesma and the City of Bay City. Not. Rem., Ex. A, Summons and Compl., ECF No. 1. On January 29, 2015, Plaintiff filed a First Amended Complaint adding a claim for violation of the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Not. Rem. at 2, ECF No. 1. Defendants removed the case to this Court on February 19, 2015. *Id.* Defendants moved for Summary Judgment on April 4, 2016. Mot. Summ. J., ECF No. 30. This Court granted the

Motion on June 10, 2016. Order Grant. Mot. Summ. J, ECF No. 37. Plaintiff filed a Notice of Appeal on July 7, 2016. Not. Appeal, ECF No. 39.

On June 21, 2017, the Court of Appeals issued an opinion affirming this Court's order in part, and reversing in part. In light of the opinion of the Court of Appeals, a status conference was conducted on August 15, 2017 to discuss a schedule for concluding discovery and preparing for trial. On February 12, 2018, Defendants filed four motions in limine, and Plaintiff filed one. Defendants sought to: 1) exclude Plaintiff's performance evaluations; 2) strike/limit Plaintiff's claim for wage loss damages based on Plaintiff's at-will employment status, his failure to mitigate, and his "unemployability" due to his service connected PTSD; 3) strike/limit Plaintiff's claim for emotional distress, back pay, and future wage loss damages; 4) strike Plaintiff's claim for unemployment benefits. ECF Nos. 46, 47, 50, 51. Plaintiff sought to prohibit Defendants from: 1) introducing evidence of collateral sources of income; 2) arguing that Plaintiff's PTSD is evidence that he did not get along with coworkers; 3) raising the issue that Plaintiff's daughter received a medical malpractice award. ECF No. 48.

Plaintiff's motion in limine was granted in part and the Court excluded 1) evidence of Plaintiff's PTSD diagnosis offered for the purpose of establishing a propensity for anti-social behavior; 2) evidence relating to Plaintiff's daughter's medical malpractice litigation or award; and 3) evidence about Plaintiff's unemployment benefits offered to reduce any award of back or front pay. ECF No. 63. Defendants' motions in limine were also granted in part only to the extent Plaintiff sought lost unemployment benefits as an element of his compensation. *Id.*

At the March 13, 2018 final pretrial conference, it was brought to the Court's attention that Defendants were in possession of documents which they had subpoenaed from the VA, which included Plaintiff's applications to the VA for "increased compensation based on

unemployability" in which Plaintiff certified that he was disabled and unable to secure any substantially gainful employment as of 2012. It was apparent that this was the first time Plaintiff's counsel had learned of the documents as well, as he subsequently indicated in a letter to the Court which he filed on the docket attempting to secure his client's documents from the Defendant. ECF No. 64. The Court directed Defendants to produce the documents to Plaintiff, and to provide a copy to chambers, which Defendants provided via the CM/ECF proposed orders function.

On March 27, 2018, Plaintiff filed a motion for reconsideration of the Court's March 13, 2018 order granting Defendants' motion in limine and excluding unemployment benefits. ECF No. 65. On April 9, 2018, the Court directed supplemental briefing on the motions in limine regarding the issues of unemployment benefits and VA administration benefits. ECF No. 66 Specifically, the Court ordered the parties to brief the scope of the permissible use of the evidence related to Plaintiff's VA applications for "unemployability" benefits.

On April 24, 2018, a status conference was held. The supplemental briefing was discussed, as well as the next steps to address the outstanding issues, chief among which were the representations made by Plaintiff in his application to the VA for increased compensation based on his "unemployability." Discovery was reopened for the limited purpose of Defendants conducting a deposition of the Plaintiff concerning the representations made in his VA application. After the deposition, Plaintiff filed a "motion to strike the defendant's defense of estoppel and to strike all portions of the May 8, 2018 deposition of plaintiff that is not consistent with the limited order of this court dated April 25, 2018." ECF No. 75. Defendants responded to the motion on June 20, 2018, and Plaintiff replied on July 9, 2018. ECF Nos. 76, 78.

Two motions are currently before the Court: 1) Plaintiff's motion for reconsideration (ECF No. 65) and 2) Plaintiffs motion to strike (ECF No. 75).

## I.

### A.

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

### B.

In the order dated March 13, 2018, the Court granted Defendants' motion in limine to exclude evidence relating to unemployment compensation. ECF No. 63 at 8. Notably, Plaintiff had filed his own motion in limine to exclude evidence of collateral sources of income. The Court concluded that unemployment benefits were indeed collateral sources of income, and would be excluded from evidence. Plaintiff agreed that his unemployment benefits should not be *deducted* from any award of lost wages. However, Plaintiff contended that his unemployment benefits should in fact be *added* to his wage loss claim as an element of damages. Because the

controlling authority provides that unemployment compensation is to be *disregarded* when making a damage award, the Court found that unemployment compensation would be excluded for all purposes. *Id.* at 8 (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1170 (6th Cir.), opinion amended on denial of reh'g, 97 F.3d 833 (6th Cir. 1996) ("Unemployment compensation is paid not to discharge an obligation of the employer but to carry out social policies of the state. Thus, unemployment benefits are collateral benefits which the district court should *disregard* in making its award.") (emphasis added); *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 628 (6th Cir. 1983)).

Plaintiff moves for reconsideration arguing that *Thurman* and *Rasmus* do not support the proposition that unemployment benefits cannot be added to his wage loss claim, as both cases addressed whether unemployment benefits should be deducted from a wage loss claim. In short, Plaintiff contends that his unemployment compensation was a benefit of the bargain he reached with his employer. The nature of his seasonal employment resulted in him being temporarily laid off once the bridge closed in the winter. In the meantime, he was eligible for unemployment benefits until he was re-hired again in the spring. As a result of losing his job, he not only lost his income from his employer but also his ability to collect unemployment benefits for several months each year.

However, Plaintiff has yet to provide any legal authority for the proposition that unemployment compensation can be considered an element of damages. This is particularly telling given that the only controlling authority he identifies specifically indicates that unemployment compensation must be *disregarded* when making a damage award. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1170 (6th Cir.), opinion amended on denial of reh'g, 97 F.3d 833 (6th Cir. 1996). Furthermore, Plaintiff provides no factual support for the notion that

unemployment compensation was a benefit of the bargain between him and his employer. His employer did not, and could not, guarantee him unemployment benefits. Accordingly, Plaintiff's motion for reconsideration will be denied.

## II.

The remaining motion currently pending is Plaintiff's "motion to strike Defendants' defense of estoppel and to strike all portions of the May 8, 2018 deposition of Plaintiff that is not consistent with the limited order of this Court dated April 25, 2018." ECF No. 75. At issue is the legal effect of Plaintiff's applications for individual unemployability benefits from the Veterans Administration. This issue was the subject of the supplemental briefing in April and was discussed at several status conferences. Additional VA records were produced and exchanged, and discovery was reopened for Defendants to depose Plaintiff concerning the representation he made.

Plaintiff applied for VA disability benefits on August 31, 2012 due to his service-connected PTSD.[1] The VA found that Plaintiff's PTSD was a service-connected disability.[2] VA benefits are awarded on a sliding scale depending on the disability percentage assigned. Plaintiff was assigned a percentage of 70%, and receives payments of roughly $1,400 per month. On June 28, 2013, Plaintiff submitted a "VA application for increased compensation based on unemployability" (hereinafter, "unemployability" application). ECF No. 75-2 at PGID 3614. In the application, Plaintiff certified that he was unable to secure any substantially gainful occupation[3] due to his service-connected disability.[4] *Id.* In box 7, Plaintiff represented that PTSD

---

[1] The 2012 bridge tending season ended in November, and Plaintiff was asked not to return in March of 2013 for the new season.
[2] Defined as "a condition incurred during or aggravated by military service, for which the Veteran is receiving VA benefits."
[3] 38 CFR § 416 provides that "Marginal employment shall not be considered substantial gainful employment. For the purposes of this section, marginal employment generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census,

is the service connected disability that prevents him from securing any substantially gainful occupation. *Id.* at PGID 3614. In box 13, under "date your disability affected full time employment" Plaintiff entered "09/2012." *Id*. Plaintiff testified that "the VA Application dated June 20, 2013 *appears to be signed by me*" but that he did not prepare it and "would never have signed" it because it was filled with errors. Aff. ¶ 1, 2, 13 ECF No. 75-2 at PGID 3618. The June, 2013 document was not processed and the VA sent Plaintiff a letter asking for supplemental documentation. *Id.* ¶ 15.

Plaintiff completed another unemployability application in September, 2013 which contains the same certification statement as the June, 2013 application, namely that he was unable to secure any gainful employment due to his service connected disability.[5] ECF No. 75-3 at PGID 3643. In box 13, under "date your disability affected full time employment," he entered "2012." *Id.* Plaintiff acknowledges that he did complete and sign the September, 2013 application. Aff. ¶¶ 20-21, ECF No. 75-2 at PGID 3620. His application for unemployability was denied, and the VA maintained his disability percentage assignment at 70%. ECF No. 75-3 at PGID 3653–54. He never appealed the ruling. Aff. ¶ 23, ECF No. 75-2 at PGID 3620.

Defendants contend that Plaintiff should be estopped from claiming that his economic damages were caused by Defendants terminating his employment because, as he represented in his VA application, his PTSD rendered him "unemployable." Plaintiff contends that Defendants

---

as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold.

[4] The application notes as follows at the top of the form: "This is a claim for compensation benefits based on unemployability. When you complete this form you are claiming total disability because of a service-connected disability(ies) which has/have prevented you from securing or following any substantially gainful occupation." At the end of the document, Plaintiff certified a number of things including the fact that "as a result my service connected disabilities, I am unable to secure or follow any substantially gainful occupation."

[5] Perhaps in support of his subsequent application in September, 2013, it appears Dr. Elaine M. Carroll sent Plaintiff a letter dated August 12, 2013 that reads as follows: "Veteran lost his job as a bridge tender due to symptoms of Post-Traumatic Stress Disorder. He is not employable." Carrol Letter, Ex. B.

waived the defense of estoppel by not raising it until after remand. Mot. at 7, ECF No. 75. Plaintiff also contends that the defense of estoppel does not apply.

Although not raised by the current briefing, the scope of the permissible use of the VA records will also be addressed. This issue was the subject of supplemental briefing the Court directed (*see* ECF Nos. 68, 69, 72, 73) in response to Plaintiff's motion for reconsideration of the Court's order granting the Defendants' motions in limine in part.

### A.

The state of the current factual record renders it nearly impossible to conduct a meaningful analysis of the waiver issue. It is unclear when Defendants became aware of the existence of the VA applications in which Plaintiff claimed total "unemployability", or when Defendants should have been aware of their existence. Defendants attached certain VA treatment records to his motion in limine, ECF No. 47, but not the "unemployability" applications in question. Those applications were brought to the Court's attention at the March 13, 2018 final pre-trial conference.

Although Plaintiff's counsel claims Defendants knew or should have known about the VA unemployability applications years earlier, it is apparent that Plaintiff's counsel was unware of their existence until March, 2018. Indeed, in Plaintiff's counsel's letter to the Court on March 27, 2018, he indicated: "As I previously argued, I viewed these claims as affirmative Defenses and I *had never previously obtained any of these documents* . . . After Mr. Ferrand's Motions in limine I started to attempt to gather some VA documents." ECF No. 64.

Plaintiff contends that, based on his interrogatory responses, "Defendants were clearly put on notice of the Plaintiff's VA treatment in 2013." Mot., ECF No. 75 at PGID 3572.

However, the fact that Plaintiff received treatment for PTSD at the VA did not put Defendants on notice that Plaintiff filed an application for unemployability.

Plaintiff also attached excerpts of his June, 2014 deposition in which he disclosed that he received a VA benefit.[6] Mot., ECF No. 75 at PGID 3563. During that deposition, Defense counsel appeared aware that Plaintiff had filed a 2012 application and was receiving benefits. Dep. at 100:16–23, ECF No. 75-2 at PGID 3604. It does not appear that the 2012 application was produced or that Plaintiff claimed total unemployability in that application. Defendants acknowledged that they subpoenaed records from the VA in March, 2014, but it is unclear what records were received. Resp, ECF No. 76 at PGID 3662.

Because there is insufficient information regarding the relevant events, the Court cannot conclude that the defense of estoppel has been waived.[7]

**B.**

With respect to the merits of the judicial estoppel defense, the Court is equally unable to grant Defendants the relief they seek (namely to strike Plaintiff's claim for lost wages). This is true for two reasons: 1) Defendants have not filed a procedurally appropriate motion seeking this relief and 2) there are several unanswered factual questions.

In *Isotalo*, on defendant's motion for partial summary judgment, the court held as a matter of first impression that the doctrine of judicial estoppel barred the plaintiff from claiming that he was capable of performing the essential functions of his job, as required to sustain his ADEA claim, where he had made a prior representation in his Social Security Disability (SSD)

---

[6] Plaintiff cites to pg 87 of the deposition, which he has not attached to his briefing. He did attach pages 98-117 which, for an unexplained reason, are attached in reverse order, requiring the reader to start at the bottom of the document and page upwards.

[7] Nor will the Court grant Plaintiff's request to strike deposition testimony. Plaintiff's analysis of this issue consists of one paragraph on the last page of Plaintiff's brief. Furthermore, he did not attach the entirety of the deposition transcript in question or make an effort to pinpoint the troublesome portions thereof. He attached pages 1-12, some of which are partially illegible due to poor scan quality.

application that he was unable to engage in any substantial gainful employment because of his disability. *Isotalo v. Kelly Servs., Inc.*, 945 F. Supp. 2d 825, 833–35 (E.D. Mich. 2013). The court's analysis was based in large part on *Cleveland*, in which the Supreme Court noted that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S. Ct. 1597, 1603, 143 L. Ed. 2d 966 (1999).

There are several distinctions to be drawn between those two cases and the present case. First, in *Cleveland* and *Isatolo* the ability to perform his/her job functions was an element of the plaintiff's prima facie case for age discrimination under the ADEA or disability discrimination under the ADA. The question at issue in those cases was whether the plaintiff was estopped from claiming that he/she was capable of performing the essential functions of his/her job where the plaintiff had stated otherwise in an application for disability benefits. Here, the ability to perform the essential functions of his job is not an element of Plaintiff's prima facie case for first amendment retaliation. Thus, his VA applications do not estop him from pursuing his claim for *liability*.

Rather, Defendants contend that Plaintiff is estopped from claiming that Defendants caused his damages (or at least his lost wages). That is, if he was too disabled to work as of 2012 due to his service connected PTSD (as he indicated in his VA applications), Defendants contend that his loss of income was *caused* by his PTSD and was not caused by his termination.

However, Defendants' theory has at least one unstated assumption. Defendants assume that the inconsistency between Plaintiff's 2013 VA applications and his current claim for lost wages necessarily bars him from recovering *any* lost wages for his entire period of unemployment spanning from March 2013 to late 2017. However, it is not at all clear that

Plaintiff claimed to have a *permanent* disability when he filed his 2013 applications. It is entirely possible that he sought treatment and recovered from his PTSD, ultimately enabling him to return to work (which he did in December 2017). It does not appear that he ever filed additional applications for unemployability after his 2013 applications were denied, and he specifically testified that he did not appeal the denial of unemployability benefits.[8] Aff. ¶ 23, ECF No. 75-2 at PGID 3620.

There are too many unanswered factual questions for the court to hold as a matter of law that Plaintiff's 2013 VA application claiming unemployability is inconsistent with his claim for lost wages for his nearly 5-year period of unemployment. Although Plaintiff has not provided a reasonable explanation for the representation he made in his VA application, Defendants have not provided any principled way to apply the doctrine of judicial estoppel to Plaintiff's claim for lost wages during a 5-year period of unemployment.

Moreover, the *Cleveland* and *Isotalo* courts reached their decision in the context of a motion for summary judgment under rule 56. Fed. R. Civ. P. 56. Here, the procedural posture in which this issue arises is rather anomalous. Plaintiff has moved to strike the defense of estoppel and Defendants have asked, in their response brief, for the Court to strike Plaintiff's claim for lost wages. Defendants have not sought leave to file another motion for summary judgment. Even if Defendant had done so, there are several questions of fact (as discussed above) that would preclude granting Defendants partial summary judgment as to Plaintiff's claim for lost wages.

In short, there are material questions of fact remaining, and the requested relief has not been raised for consideration on a procedurally proper motion. Therefore, the Court will not

---

[8] Even if his application had been granted, the VA requires the veteran to "periodically certify continued unemployability." VA Benefit Details, Ex. C.

grant Plaintiff's request to strike the defense of judicial estoppel nor will the Court summarily grant Defendants any relief with respect to that defense.

**C.**

With respect to permissible use of the VA documents, the Court had previously directed the parties to submit supplemental briefing on two additional questions: 1) whether Plaintiff's application for unemployability may be admitted into evidence or used for impeachment, and 2) whether the collateral source rule applies to prohibit the introduction of evidence of his VA partial disability benefits to reduce any award of damages.

**i.**

Although Plaintiff's unemployability application does not estop him as a matter of law from pursuing any back wages, there does not appear to be any reason why a jury should not be able to consider it in addressing Plaintiff's lost compensation.[9] Plaintiff contends that his unemployability application is irrelevant under Federal Rule of Evidence 401 because it makes no consequential fact more or less likely than it would be without the evidence. Plaintiff is incorrect. The fact of consequence is whether Plaintiff was able to sustain substantially gainful employment during the period of time in which he is claiming lost wages. He certified in writing that, at least during part of his period of unemployment, he was unable to sustain substantially gainful employment because of his disability. His written certification is clearly relevant.

Plaintiff contends that even if it is relevant, it should nonetheless be excluded under FRE 403 because its probative value is outweighed by its prejudicial effect and its likelihood of confusing the jury and wasting time. To the contrary, the application is relatively short. It's most salient component is the certification statement in which Plaintiff certifies he was too disabled to

---

[9] Hopefully the jury will have the benefit of a clearer and better developed factual record than the parties have provided to the Court thus far.

sustain substantially gainful employment as of 2012. He made this representation to obtain increased benefits. Nevertheless, his application was denied. Notwithstanding what he said in his application, Plaintiff contends he was ready to work in March of 2013. These facts will not be perplexing to the jury, and should take minimal time to develop. The jury can decide what weight to give these facts when making its damages determination.

Notably, Plaintiff only argues that the evidence is irrelevant and/or unduly prejudicial, confusing, and will result in waste of time under FRE 403. He makes no objections to admissibility based on hearsay, authentication, etc. Nevertheless, a brief discussion regarding the purpose for which the evidence can be offered might help obviate the need for this discussion at trial. The evidence can be offered to impeach any testimony by Plaintiff that, but for his termination, he would have been ready and able to pursue substantially gainful employment as a bridge tender. Pursuant to FRE 613(d), a prior inconsistent statement is admissible if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it.

It also appears that the application can be offered as substantive evidence of the truth of the assertion therein, namely that Plaintiff was *not* able to sustain substantially gainful employment. Such a statement is non-hearsay under FRE 801(d), and is admissible provided that Defendants lays a foundation for the admission thereof. In terms of authentication, Plaintiff makes various confusing representations concerning the June 2013 application, appearing to try to distance himself from the content of that application. In any event, the September 2013 application contains the same certification statement, and Plaintiff does not dispute that he completed and signed that application. Aff. ¶¶ 20-21, ECF No. 75-2 at PGID 3620. Considering

that the September application contains the more complete information, it may be more useful to the jury.

## ii

Notably, neither party has identified any case law discussing offset of VA benefits from an award of lost wages. Plaintiff argues that the lack of any authority supporting such an offset counsels against it. Defendants argue that because Social Security Disability benefits (SSD) are subject to offset, VA disability benefits should be as well.

At the outset, it is important to make a key distinction. Throughout the post-remand proceedings, Defendants have complicated matters by consistently conflating Plaintiff's *application* for unemployability (which was denied) with his partial VA disability benefits (which he is still receiving). Defendants contend that "the injury *for which compensation has been paid by the VA (unemployability)* is mutually exclusive of the injury for which Plaintiff seeks damages herein (lost wages)." Br. at 9, ECF No. 69. This italicized portion of this statement is inaccurate, or at least is unsupported by the documents Defendants have provided. That is, the VA is not compensating Plaintiff for "unemployability" nor does it appear that the VA ever compensated Plaintiff for "unemployability". "Individual Unemployability" is described by the VA as follows:

> The Veteran is receiving payment at the 100 percent rate, even though the combined service-connected evaluation is not 100 percent. The Veteran's service connected conditions cause him/her to be unable to obtain or maintain substantial gainful employment because of the Veteran's service connected conditions.

VA Benefit Details, Ex. C[10]; *see also* 38 CFR §§ 4.16, 4.18.

---

[10] The exhibits attached to this order were part of the VA records subpoenaed by Defendants and brought to the Court's attention at the March 13, 2018 pretrial conference. The Court directed Defendants to produce these documents to Plaintiff and to submit a copy to chambers. The parties attached many of the VA records to their various filings, but the specific exhibits attached to this order do not appear to have been attached to any of the parties' filings.

Plaintiff does not receive payment at the 100% rate. He continues to receive benefits based on a disability assignment of 70%. To date, the parties have devoted little attention to addressing the circumstances under which Plaintiff was awarded his 70% disability benefits.

On February 6, 2013, the VA sent Plaintiff a letter indicating that they had made a decision on his "claim for service connected compensation received on August 31, 2012." Feb. 2013 Decision Letter, Ex. A. Based on his PTSD, the VA assigned him a disability percentage of 70% noting that "your statement was adequate to establish occurrence of the claimed stressor and that the claimed stressor is consistent with the places, types, and circumstances of service." *Id.* The August 31, 2012 claim referred to in this letter does not appear to have been produced by the parties. It is unclear what the requirements were for him to obtain these benefits.[11]

Importantly, however, there does not appear to be any evidence in the record that Plaintiff ever certified an inability to work in conjunction with this August 31, 2012 claim for disability benefits (not to be confused with his application for unemployability, which was denied). Nor does there appear to be any inconsistency between Plaintiff working and receiving these benefits, which he claims he is currently doing, and which he contends he would have been doing between

---

[11] The letter tends to suggest that he was only required to "establish occurrence of the claimed stressor and that the claimed stressor is consistent with the places, types and circumstances of service" (i.e., that the stressor is real and connected to his military service). Indeed, the VA website provides the following description of eligibility requirements: "compensation benefits require that your disability be service-connected. You must also have separated or been discharged from service under other than dishonorable conditions . . . Your disability must be the result of an injury or disease that was incurred or aggravated while on active duty or active duty for training; or from injury, heart attack, or stroke that occurred during inactive duty training. A disability can apply to physical conditions, such as Lou Gehrig's Disease, as well as mental health conditions, such as post-traumatic stress disorder (PTSD)." https://www.benefits.va.gov/compensation/ The website also indicates the following evidence that is required: Medical evidence of a current physical or mental disability, Evidence of a relationship between your disability and an injury, disease, or event in military service. Medical records or medical opinions are required to establish this relationship. https://www.benefits.va.gov/COMPENSATION/types-disability.asp
The website states that "Generally, the degrees of disability specified are also designed to compensate for considerable loss of working time from exacerbations or illnesses." However, actual loss of working time or inability to work are not listed as eligibility requirements.

2013-2017 had he not been terminated.[12] In fact, in the decision letter denying Plaintiff's unemployability application and continuing his disability assessment at 70%, the VA made a specific finding that "The veteran is considered capable of gainful employment [38 CFR § 4.16 . . . The evidence does not show that your PTSD symptoms are severe enough to preclude employment." March 2014 Decision Letter at 3, Ex. D.

Turning now to the cases Defendants cite concerning setoff of SSD benefits, they are distinguishable. In *Flowers*, the court noted that,

> we have said in an age discrimination case that even if the source is collateral, it is clear that a district court has discretion to deduct or not deduct them from an ADEA back pay award. However, just as we hold that the back pay must be specifically calculated and tailored to the times when Flowers was a qualified individual, the only social security disability payments which can be set off are the ones he received during periods for which he received back pay—the 20 months in the illustration we just noted.

*Flowers v. Komatsu Min. Sys., Inc.*, 165 F.3d 554, 558 (7th Cir. 1999). Guiding the court's discretion in deciding whether to offset SSD benefits from lost wages was the degree of inconsistency between receipt of SSD benefits and a claim of lost wages covering the same time period. *See Id.* (noting that, although "the receipt of social security disability benefits does not preclude a person, as a matter of law from being a qualified person with a disability" the SSA finding is not irrelevant). Here, there does not appear to be any inconsistency between Plaintiff working (or seeking lost wages for a period of unemployment) and collecting VA benefits during the same time period.

Defendants also cite to *Cantrell* in which the court found that "the district court properly offset temporary *total disability* benefits received by Cantrell against the back-pay award."

---

[12] Of course, this contention appears to be undermined by the representation he made in his application for unemployability which, as discussed below, is fodder for jury consideration on causation. This is entirely different, however, from claiming (as Defendant does) that his receipt of partial VA disability benefits is inconsistent with claiming lost wages.

*Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180, n.2, (6th Cir. 1995) (emphasis added). Here, by contrast, Plaintiff has never received total disability benefits.

Defendants also cites to *Nelson*, in which the court setoff SSD benefits from the damage award, noting:

> Plaintiff only sought Social Security disability benefits after he was terminated. Since back and front pay damages will effectively provide Plaintiff with the same income he would have received had he remained employed with Defendant until age 63, the Court is persuaded that those damage awards make him "whole." The Court is persuaded that the addition of the Social Security awards Plaintiff has already received and continues to receive would make him more than whole . . .

*Nelson v. J.C. Penney Co.*, 858 F. Supp. 914, 930 (N.D. Iowa 1994), *aff'd in part, vacated in part,* 70 F.3d 962 (8th Cir. 1995), *opinion superseded on denial of reh'g,* 75 F.3d 343 (8th Cir. 1996), and *aff'd in part, vacated in part,* 75 F.3d 343 (8th Cir. 1996). Here, by contrast, there is no evidence to suggest that the VA benefits are duplicative of the money Plaintiff would have received had he remained employed with the Defendant Bay City. There does not appear to be any reason he could not have collected those benefits while simultaneously working, which he claims he is currently doing.

Similarly, Defendant cites to *Acevedo*, in which the court held that "Acevedo is not entitled to backpay since she was receiving benefits for a disability that allegedly precluded her from engaging in gainful employment." *Acevedo Martinez v. Coatings & Co.*, 286 F. Supp. 2d 107, 116 (D.P.R. 2003). Here by contrast, there is nothing to suggest that Plaintiff's *receipt of VA benefits* precluded him from gainful employment. Indeed, the VA made a specific finding to the contrary. *See* March 14 Decision Letter at 3, Ex. D.

Finally, Defendants cite to *Thornley*, which involved an offset of SSD benefits from duplicative benefits the Plaintiff would have received under the employer's long-term disability plan. *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 31 (2d Cir. 1997). No such long-term disability

plan is at issue here; rather the question at issue is whether to offset Plaintiff's VA benefits from an award of back pay or front pay. Thus, *Thornley* has entirely inapposite.

### III.

Accordingly, it is **ORDERED** that Plaintiff's motions, ECF Nos. 65 and 75, are **DENIED**.

It is further **ORDERED** that Defendants may introduce evidence of Plaintiff's VA Applications for Increased Compensation Based on Unemployability, as set forth in section II.C.i. above.

It is further **ORDERED** that Defendants will not be permitted to introduce evidence of VA disability benefits for the purpose of offsetting those benefits against any award of back pay or front pay.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 4, 2018

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 4, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager